RAOUL H. FLEISCHMANN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90305. Promulgated October 12, 1939.

*L. L. Hamby, Esq., Elden McFarland, Esq.,* and *Ellwood W. Kemp, Jr., Esq.,* for the petitioner.

*George R. Sherriff, Esq.,* for the respondent.

OPINION.

MURDOCK: I. *Income from the trust of March 19, 1931.*—The Commissioner, in determining the deficiencies, included the income of this trust in the income of the petitioner on the ground that the trust was a revocable trust within the provisions of section 166 of the Revenue Acts of 1928, 1932, and 1934. He has now abandoned this contention, except as to the year 1934, and he no longer argues that section 166 of the Revenue Acts of 1928 and 1932 has any application.

That section applies only where the grantor, or the grantor and certain others, had a power "during the taxable year" to revest title to a part of the corpus in the grantor. Since the deed of trust gave no such power, the Commissioner was obviously in error in applying section 166 of the Revenue Acts of 1928 and 1932. The words "during the taxable year" were dropped from section 166 when it was incorporated in the Revenue Act of 1934 and the Commissioner still contends that the income of the trust for 1934 is taxable to the petitioner under the provision of that section to the effect that where at any time the power to revest in the grantor title to any part of the corpus is vested in the grantor, then the income of such portion shall be included in his income.

He relies upon the provisions of the deed of trust giving the petitioner certain elections as each child became 21. Those provisions are quoted *in extenso* in the findings. The grantor, if alive, could then elect (a) to terminate the trust and give the principal and any accumulated income to his wife, if living, or, if she was dead, "to distribute the same in such manner as the Grantor may direct"; (b) to continue the trust and let the corpus be disposed of by the child at death; and (c) "such other final distribution or provision as the Grantor may at that time, namely, as each child or stepchild attains the age of twenty-one years, direct." The second choice, of course, is not a power within section 166. Neither is the first, since the effective part of it was expressly contingent upon the prior death of the wife. *Corning v. Commissioner*, 104 Fed. (2d) 329; *John Edward Rovensky*, 37 B. T. A. 702. But the Commissioner contends that the third choice permitted the petitioner to distribute the principal and

any accumulated income of each one-third to himself. A power to distribute as each child became 21 would be like a similar power exercisable after a certain date. *Estate of A. C. O'Laughlin*, 38 B. T. A. 1120. The force of the respondent's argument might be irresistible if the provision of the deed stood alone. The intent of the grantor is controlling. That intent must be gathered from the entire deed and from all other relevant and admissible evidence. The deed when read as a whole indicates that the petitioner did not reserve any power to revest title to any of the trust property in himself. This is shown not only by the general purpose of the trust (to provide permanently for the three boys) but by the unequivocal language of paragraph (5) stating that the petitioner reserved rights to nominate the ultimate recipients of the principal but "the transfer of principal hereunder shall be absolute and irrevocable." He obviously meant that under no circumstances could he use any of his retained powers to take back the principal for his own. This interpretation of the deed is corroborated by his testimony as to his intent and purpose and by the action which he took when the first boy became 21. We conclude that under none of his reserved powers could the petitioner revest in himself, at any time, title to any of the trust property and section 166 does not apply.

The Commissioner makes arguments in his brief for the first time that the income of the trust is taxable to the petitioner on grounds other than the provisions of section 166. The petitioner complains of this change on the part of the Commissioner and argues that the Commissioner thereby raised an affirmative issue upon which he has the burden of proof. The Board has said many times that the real question for decision is the correctness of the action of the Commissioner and not the correctness of the reason which he assigned in his notice of deficiency. *Edgar M. Carnrick*, 21 B. T. A. 12; *James P. Gossett*, 22 B. T. A. 1279; affd., 59 Fed. (2d) 365; *Richard L. McCann, Administrator*, 30 B. T. A. 102; *Charles J. O'Laughlin*, 30 B. T. A. 1327; affd., 81 Fed. (2d) 269; *Sand Springs Railway Co.*, 31 B. T. A. 392. Here he included the income of the trust in the income of the petitioner and still insists that that income was properly included in the income of the petitioner. He merely assigns a new reason for his action. The burden of proof does not shift under such circumstances although such a delayed reversal of reasoning is unfortunate and might justify a further hearing if the petitioner claimed surprise and desired to introduce further proof to meet the change. He has known of the present contentions of the respondent since about July 1, 1939, and has made no request to introduce additional evidence. He does not claim surprise, but attempts to answer all of the arguments of the respondent. The change made by the

Commissioner in *Tex-Penn Oil Co.* v. *Commissioner*, 83 Fed. (2d) 518, was not a mere change in the reason assigned for a particular action and that case is not in point.

One of the new arguments made by the respondent in his brief is that there was no substance to the trust and it should be disregarded for income tax purposes in accordance with principles announced in *Benjamin F. Wollman*, 31 B. T. A. 37; *William C. Rands*, 34 B. T. A. 1107; appeal dismissed, 101 Fed. (2d) 1018; *Warren H. Corning*, 36 B. T. A. 301; reversed, 104 Fed. (2d) 329; and *Estate of A. C. O'Laughlin*, *supra*. The reasons assigned by the respondent are wholly inadequate for his purpose. This trust was created for a legitimate and laudable purpose and was used to carry out that purpose. The transfer was complete and the income was used for the benefit of others than the petitioner. The petitioner did not retain privileges and benefits so substantial as to justify treating the income and corpus as his own. Cf. *Burnet* v. *Wells*, 289 U. S. 670.

Another new argument made by the respondent in his brief is that one-third of the income of the trust was to be used for the support, education, and maintenance of the petitioner's son and, therefore, was taxable to the petitioner under *Douglas* v. *Willcuts*, 296 U. S. 1, and *Commissioner* ʃv. *Grosvenor*, 85 Fed. (2d) 2. The trustee was directed to apply the income from one-third of the trust "to the support, education, and maintenance" of the son during his minority "in such manner and amounts as she may in her sole discretion deem best." Reference to possible accumulations does not change the fact that the income was to be used eventually and used only for the support, education, and maintenance of the son. That was the primary purpose of this part of the trust. Cf. *Higgins* v. *White*, 93 Fed. (2d) 357. Furthermore, the petitioner testified that, to the best of his knowledge, the income was used to support, educate, and maintain his son. Cf. *E. E. Black*, 36 B. T. A. 346; *Martin F. Tiernan, Trustee*, 37 B. T. A. 1048. This case is not distinguishable from *Commissioner* v. *Grosvenor*, *supra*. Thus, one-third of the income for each year was taxable to the grantor under the cases cited. The respondent recognizes that the petitioner was under no obligation to support the Botsford boys and does not contend that the principles of the above cases have any further application.

Another argument made by the respondent to support his determination is that section 167 applies, since the income of the trust could be accumulated and the petitioner could then take the accumulations for himself. Section 167 of the Revenue Act of 1928 refers only to income over which the grantor, alone or in conjunction with some other person, may exercise a discretion. Here the grantor could exercise no discretion as to the disposition of any current income. The

sole discretion was lodged in the trustee. Sections 167 (a) (1) of the Revenue Acts of 1932 and 1934, upon which the respondent relies, are different in this respect. They provide that where any part of the income of a trust is, or, in the discretion of any person not having a substantial adverse interest in the disposition of such part of the income, may be held or accumulated for future distribution to the grantor, then such part of the income of the trust shall be included in computing the net income of the grantor. The discussion above in regard to the intent of the grantor and his rights of election is a complete answer to this contention of the respondent, since it led to the conclusion that he retained no right to take any of the accumulations for himself under any circumstances. Furthermore, the argument is unsound in other respects. It does not appear that the trustee ever accumulated any of the income or that she was authorized to accumulate any amount, except as a means of spreading current income over an appropriate period. She was eventually to use all of the income for the support, education, and maintenance of the boys. Cf. *Higgins* v. *White, supra; Corning* v. *Commissioner, supra; Daisy Christine Patterson, Executrix*, 36 B. T. A. 407. If no income was to be accumulated, none could ever get to the grantor under his power of election. Certainly the deed does not indicate an intent to have the trustee accumulate income so that the grantor could recapture it when a child became 21.

The income of the trust for the son has been held to be taxable on other grounds and only that of the trusts for the Botsford boys need be considered. The trustee was their mother, she had custody of them, was able to support, educate, and maintain them, and was obligated by the decree of divorce, if not otherwise, to provide for them. It was to her interest to use the income of the trusts to defray the expenses which otherwise might have to be paid from her personal funds. Although she thus acquired no legal interest in the trust income, nevertheless, from a practical standpoint she had a very real and substantial interest in the disposition of the income adverse to any possible interest of the grantor in any accumulations. It is thus immaterial whether her interest in the accumulations under any of the elections of the petitioner might or might not be considered substantially adverse. Cf. *John N. Fulham*, 40 B. T. A. 48; *Jane B. Shiverick*, 37 B. T. A. 454. Section 167 (a) (1) of the Revenue Acts of 1932 and 1934 does not apply to the income of the trusts for the Botsford children.

We hold, in accordance with the foregoing discussion as to the trust of March 19, 1931, that only one-third of the income for the years before us is taxable to the grantor.

II. *Income from trusts of September 22, 1932, and May 24, 1934.*— The Commissioner included the income of these trusts in the income

of the petitioner upon the theory that section 167(a)(2) of the Revenue Acts of 1932 and 1934 applied. He abandoned 167(a)(2) in his brief as a basis for his action and attempts to justify that action upon other grounds. The petitioner does not complain of this change upon the part of the Commissioner; nevertheless, the discussion under the first issue relating to a similar change is equally applicable here.

One of the contentions of the Commissioner is that a close scrutiny discloses a lack of substance in the trusts, a mere scheme to reduce income taxes, and trusts which should be disregarded for income tax purposes in accordance with the principles announced in *Benjamin F. Wollman, supra; William C. Rands, supra;* and *Estate of A. C. O'Laughlin, supra.* These transactions were within the family of the petitioner and should be closely scrutinized to see what their purpose was and to determine how much substance was in them for income tax purposes. *Joseph E. Uihlein,* 30 B. T. A. 399; affd., 82 Fed. (2d) 944; *Thomas W. Mehan,* 32 B. T. A. 1088; affd., 90 Fed. (2d) 609; *Edmund S. Twining,* 32 B. T. A. 600, 604; affd., 83 Fed. (2d) 954; certiorari denied, 299 U. S. 578.

The petitioner testified that he created the trusts to prevent himself from losing his property through his tendency to make unwise investments, to safeguard his property from influences of the prevailing unsettled financial conditions of the times, and to provide for his family and relatives who might have to call upon him for assistance. He did not explain why he created four trusts instead of one.

The first reason is not very convincing in view of the provisions of the trust deeds reserving to the petitioner the absolute power to direct the disposition and acquisition of all trust property and relieving the trustee of all responsibility in such matters. Furthermore, it is not at all clear that "The Settlor's equity" in the shares, which was all that was assigned, had any substantial value. Counsel for the petitioner concede in their reply brief that the petitioner was in error when he testified that the shares were not pledged as collateral in 1932, 1933, and 1934 for the benefit of the petitioner. The record does not show the extent to which the shares were encumbered or the ability and intention of the petitioner to relieve the shares from the lien or liens. Seizure of the shares to satisfy the liens might have left nothing for the trusts. The trusts did not free the property from the danger of unwise investments by the petitioner. Nor does the evidence disclose how the creation of the trusts was a safeguard against the dangers of the times. The trusts might have been used to assist relatives, but in fact all of the income for these years and all except an undisclosed amount in later years was distributed to the petitioner. The trusts were designed to last for short periods only. The first was actually revoked at the will of the petitioner at a time

when it was said to be irrevocable. The relatives, other than the wife, were not consulted. These circumstances and others weaken the force of the testimony of the petitioner as to the purpose of the trusts.

The evidence indicates that the petitioner must have had other purposes in creating the trusts. One was a purpose to save taxes. If the income from the shares could be divided among four trusts, instead of being all taxed to one or to the petitioner, the result would be a saving in tax. No other reason for the creation of four trusts instead of one has been suggested. If the trustee could refrain from distributing the income of each year to the petitioner until a few days after the close of the year, section 162 (c) might not require that the income be taxed to the petitioner instead of to the four trusts. The original trusts were designed to avoid the application of section 166 of the Revenue Act of 1932. When the change in that section was made by the Revenue Act of 1934, approved on May 10, 1934, the trusts were promptly revoked and new ones created to avoid the application of the new section 166. These circumstances and others indicate that the petitioner and his wife were fully advised and conscious of the tax consequences of their acts. While legitimate methods of avoiding tax are entirely proper, nevertheless, a purpose to avoid tax is not without significance here, since it may be the real purpose back of the transactions and it may be some evidence of a lack of substance for tax purposes in the trusts. *William C. Rands, supra.*

The petitioner testified that he had no agreement or understanding with his wife that she would pay the income of the trusts to him. She actually paid all of the income of the trusts for these years to him. She was even careful to pay it to him after the close of the year so he might not be taxable under section 162 (c). His testimony is that she discussed the distributions with him and he knew before the end of the year that she intended to distribute to him.

It is apparent that these trusts were quite thin. The doubtful value of the equity, the fact that the shares were pledged for the benefit of the petitioner, the short duration, the ease of revocation, the power of control in the grantor, the actual receipt of all income by the petitioner, the lack of any real purpose except to reduce taxes, and the absence of any indication that the interests or needs of any other "beneficiary" was considered during these years, all go to show that the petitioner lost little, if any, actual control over and benefit from his property by the two sets of instruments. Cf. *Burnet* v. *Wells, supra; Corliss* v. *Bowers*, 281 U. S. 376; *DuPont* v. *Commissioner*, 289 U. S. 685; *Lucas* v. *Earl*, 281 U. S. 111. The Commissioner's argument does not require a holding that no trusts existed in equity. *Stoddard* v. *Eaton*, 22 Fed. (2d) 184. The Supreme Court

said in the *Wells* case that "liability may rest upon the enjoyment by the taxpayer of privileges and benefits so substantial and important as to make it reasonable and just to deal with him as if he were the owner, and to tax him on that basis." The Board held in the *Wollman* case, *supra*, that the principle thus stated could apply even to income from property placed in trust. It said in the *O'Laughlin* case that "The Government is not required to tax trusts as separate taxable entities where the terms of the trust instrument and the manner of conducting the trusts indicate that they are not entitled to be distinguished from the grantor for tax purposes." This is another case like that of *Benjamin F. Wollman, supra; William C. Rands, supra;* and *Estate of A. C. O'Laughlin, supra*, where the trust was so lacking in substance and the grantor retained such powers and benefits that the trust may be disregarded for tax purposes and the income taxed to the grantor.

III. *Loss on investment in the National Gift Guild.*—The respondent contends that the petitioner did not enter into this transaction for profit, but the evidence clearly shows that he did enter into the transaction with the intention and for the purpose of profit. There is no question as to the fact that a loss occurred in 1931 or as to the amount lost.

IV. *Loss on sale of stock of General Baking Co.*—The question here is confined to that of the basis to be used. The Board held in *H. B. Leary, Sr.*, 34 B. T. A. 1206; affd., 93 Fed. (2d) 826, that a statutory reorganization occurred and the gain to the stockholders was taxable only to the extent of the cash received. The parties have stipulated all of the facts on this issue, including a statement that, upon the exchange of the preferred stock for stock and debentures of the General Baking Co., 92.1589 percent of the basis is to be allocated to the stock received in exchange. The petitioner contends that 92.1589 percent of the basis of the 1,900 old preferred shares in street names should be divided among the 2,850 new common shares taken in street names because the 2,850 shares are identified as shares received in exchange for the 1,900 preferred shares. The record, even including as it does the facts set forth in the opinion of the Board in the *Leary* case, fails to show any details of the exchange made on April 1, 1931. The ratio of exchange of old preferred or old common for new common, debentures, and cash is not disclosed. It is not clear that the 1,900 preferred shares were separately exchanged for 2,850 new common shares or that the plan permitted any such separate exchange. But even if that fact were clearly shown, it might not be important. In *Helvering* v. *Stifel*, 75 Fed. (2d) 583, the stock of two corporations was exchanged for the stock of one new corporation and the court said that "any calculation of the cost of the shares sold [new shares], based upon the original cost of the

shares of only one of the two companies, would be fallacious" and held a correct basis was the cost of all old shares divided equally among the new shares received in exchange. See also *P. L. Wheeler*, 32 B. T. A. 917.

The respondent contends that the correct basis is obtained by adding the total cost of the old common to 92.1589 percent of the total cost of all old preferred owned by the petitioner and dividing that total basis equally among all of the 8,463 new shares received in the exchange. It is now well established that where stock of one corporation is exchanged for stock of another, in pursuance of a plan of reorganization, the basis of the shares surrendered (after adjustment for any recognized gain or loss) must be allocated equally to the shares acquired, and the cost of some particular lot of the old shares may not be allocated to some particular lot of the new shares. *Christian W. Von Gunten*, 28 B. T. A. 702; affd., 76 Fed. (2d) 670; *Olive Hume Oliver*, 30 B. T. A. 1381; affd., 79 Fed. (2d) 561; *Helvering* v. *Stifel, supra; Commissioner* v. *Bolender*, 82 Fed. (2d) 591; *Alvan T. Fuller*, 31 B. T. A. 154; reversed, 81 Fed. (2d) 176; *Jacob Epstein*, 36 B. T. A. 109; *Henry M. Runkle*, 39 B. T. A. 458; *Henry Hudson*, 39 B. T. A. 1075, 1100. There was in some of the cited cases as much justification for identification and separate allocation of cost as is shown here, yet the holding was that the only practical and proper method was to average the total old bases among all the new shares. The method urged by the respondent is in accordance with those decisions and will be followed here.

V. *Loss on sale of stock of General Holding Co., Ltd.*—The loss on this stock was $19,280. The respondent contends that the petitioner did not enter into this transaction for profit and the stock became worthless prior to 1932. The facts disprove both of these contentions. The sale was a complete and final disposition of the stock. The purchaser was one who was familiar with the affairs of the company and that circumstance is some corroboration of the other evidence that the stock had not become worthless even in 1932.

VI. *Loss on Barbour patent.*—The dispute was as to the year in which this loss was sustained. The respondent concedes in his brief that 1933 was the year, the petitioner says the same, and the evidence shows that the loss of $17,500 was sustained in that year.

*Decision will be entered under Rule 50.*