BURROUGHS BUILDING MATERIAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18763. Promulgated November 9, 1929.

*Donald Horne, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

### OPINION.

LITTLETON: The Commissioner determined a deficiency of $3,591.24 income and profits tax for 1921. This resulted from the disallowance of deductions taken by petitioner of the amount of fines imposed by the State of New York upon petitioner and its president for criminal violations, and the cost of legal services in defense thereof.

The facts are embodied in the following agreed statement:

1. The petitioner is a New York Corporation, with its principal office at Johnson Avenue and Newton Creek, Brooklyn, New York, and during the taxable year 1921 was engaged in the business of dealing in and selling masons' building materials, to contractors and builders.

2. The petitioner duly filed an income and profits tax return for the calendar year 1921.

3. In computing the tax, the petitioner deducted as ordinary and necessary expenses, incurred in the carrying on of its business, among other deductions, sums totaling $7,510, the details of which are set out in paragraphs 8, 9 and 10, *infra.*

4. That in the deficiency letter dated May 22, 1926, the Commissioner of Internal Revenue stated that he had disallowed as deductions for ordinary business expenses the said sums totaling $7,510, and determined that there was a deficiency of $3,591.26.

5. That thereafter, and within the time allowed by law, the petitioner duly appealed to this Board from said determination, and duly filed its petition and amended petition with the Clerk of the Board.

6. The petitioner in 1920 was a member of an association of building material dealers, and the petitioner and other such dealers entered into an agreement to fix the prices at which building materials were to be sold to contractors and builders.

7. That the petitioner thereupon continued to carry on its business and pursuant to the terms of said agreement sold building materials to contractors and builders at prices fixed pursuant to said agreement.

8. That for its participation in said price-fixing agreement, the petitioner, on February 9, 1921, was indicted for violation of Section 341 of the General Business Law of the State of New York; that the petitioner pleaded guilty to said indictment, and on May 25, 1921, was ordered by the New York Supreme

Court to pay a fine of $2,500; that on May 25, 1921, the petitioner paid said fine to the Clerk of the Supreme Court of New York County and was duly discharged by said Court.

9. That for his participation in said price-fixing agreement, Cornelius A. McGuire, president of petitioner corporation was on January 28, 1921, indicted for violation of Section 580 of the Penal Law of the State of New York; that said C. A. McGuire pleaded guilty to said indictment and on May 25, 1921, was ordered by the New York Supreme Court to pay a fine of $450, and $60 as costs; that on May 25th, 1921, the petitioner paid said fine and costs to the Clerk of the Supreme Court of New York County, and the said C. A. McGuire was thereupon discharged.

10. That upon being indicted, the petitioner retained the law firm of Holmes & Bernstein of 44 Court Street, Brooklyn, New York, to defend it, and to defend C. A. McGuire, as its President, and agreed to pay said firm the sum of $4,500 for such defense.

11. The said firm of Holmes & Bernstein did conduct such defense and in 1921, the petitioner paid said sum of $4,500 in full to the firm of Holmes & Bernstein.

The petitioner contends that the fines and counsel fees are deductible under the Revenue Act of 1921, section 234 (a) (1), as "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." The amounts were paid as the result of petitioner's participation in a price-fixing agreement with other dealers in building materials, such agreement being a misdemeanor under section 341 of the General Business Law of New York. In urging that the expenses in question are deductible, the argument is advanced that, since the income which arose therefrom is taxable, expenditures made as a result of the production of this income are necessarily deductible in order to arrive at net taxable income. But is this true? We think not. What is income is controlled by the Constitution, whereas the deductions which may be made therefrom in order to arrive at net taxable income are statutory concepts. *Chicago, Rock Island & Pacific Railway Co.*, 13 B. T. A. 988. And here certain statements made by Mr. Justice Holmes in *United States* v. *Sullivan*, 274 U. S. 259, seem particularly pertinent. The court was considering the question of the return to be filed by an individual engaged in the bootlegging business and in answer to a similar contention as here advanced with respect to deductions said:

It is urged that if a return were made the defendant would be entitled to deduct illegal expenses such as bribery. This by no means follows but it will be time enough to consider the question when a taxpayer has the temerity to raise it.

Our question then is to be decided on the basis of whether the items under consideration are ordinary and necessary expenses of carrying on the business in which petitioner was engaged and not

on the basis of whether income resulted on account of the activities of the petitioner for which the expenditures were made. And even if we should concede that, since the amounts in question were required to be paid, they therefore constituted necessary expenses in carrying on petitioner's business as contemplated by the provision before us—though the foregoing is not free from doubt, we are faced with the proposition that being necessary is not sufficient; they must be both *ordinary and necessary*. And in *Illinois Merchants Trust Co., Executor*, 4 B. T. A. 103, we quoted with approval the definition of "ordinary" from Webster's New International Dictionary, as follows: " (1) According to established order; methodical; settled; regular; (2) Common; customary; usual." The petitioner was engaged in the business of dealing in and selling building materials, a commonly accepted legitimate business. And certainly it would be imputing to concerns of this character something which we would not do to say that it is " customary," " common," " usual," etc., for them to violate State or Federal statutes and incur fines in order to carry on their business. But we do not think that illegal price-fixing is a " necessary element " of carrying on the business in which petitioner is engaged. Essentially, the case at bar is not unlike that before us in *Columbus Bread Co.*, 4 B. T. A. 1126, wherein we held that an amount paid by a taxpayer on account of a fine, penalty and court costs for violating the antitrust law of a State, and attorneys' fees incident to the defense of the taxpayer against an indictment for such violation, were not deductible as ordinary and necessary expenses of carrying on the taxpayer's business.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

Murdock, concurring: While, if it were shown that expenses such as these fines were ordinary and necessary in the trade or business, they could be deducted, yet, in this case, it has not been shown that these fines were ordinary and necessary expenses of the petitioner's business.

Sternhagen, dissenting: Since the state statute prohibits this agreement, the fines and punishments must be taken as contemplated by it, *Armour Packing Co.* v. *United States*, 209 U. S. 56; *Northern Pacific Ry.* v. *Wall*, 241 U. S. 87; and if the agreement itself and its performance may be regarded as ordinary and necessary incidents of petitioner's business, the costs of its performance and expenses

resulting from it are among the expenses of the business. If agreements such as this were not unlawful, as would be true in Delaware and perhaps other states, the expenses which they involve would be among those ordinary and necessary business expenses which serve to reduce income. See *Independent Brewing Co.*, 4 B. T. A. 870; *California Brewing Association*, 5 B. T. A. 347; *Richmond Hosiery Mills*, 6 B. T. A. 1247; *H. A. Allen*, 7 B. T. A. 1256; *George Ringler & Co.*, 10 B. T. A. 1134; *George M. Cohan*, 11 B. T. A. 734; *Sam Harris*, 11 B. T. A. 871; G. C. M. 1627, VI C. B. 61.

The expenses of defending a civil suit growing directly out of a taxpayer's business, such as by a partner for accounting, by a patient of a physician for alleged malpractice, by an injured person for damages, or by an alleged patentee for damages for infringement, have been held by the United States Supreme Court to be deductible in *Kornhauser* v. *United States*, 276 U. S. 145.

Thus it develops that the crucial question is whether the expenses here are deprived of deductibility because they were brought about by business conduct which the State of New York declares to be a crime. If so, it seems to me it must be by reading a qualification into the taxing statute by implication, since the explicit language is not restricted and makes no distinction between expenses growing out of crime and those which do not. When we seek for a reason to restrict the deductions, it seems to rest in the idea that an outlawed act can not involve an ordinary and necessary expense—that it is incongruous and repulsive to regard it as a business incident, and that such an argument should not be entertained. Essentially, the idea is that the express statutory deduction is narrowed by an assumed public policy to exclude such expenses. This Board has in several cases applied that view by saying that, as to individuals the expense was " personal " and hence expressly deprived of deduction by section 215, or that it was not proximately related to the business, or that it was not ordinary and necessary.[1] But none of these things can be said of these expenses. They were corporate and not personal, were directly related to the business and were no doubt substantially responsible for profit, and unless we are to adopt an esoteric significance for words of common speech, they were ordinary and necessary to the business of earning such profits. I am not apprised of any overwhelming Federal public policy which takes them from the statutory category of deductions applied in determining net income and I have no reluctance in saying, as the facts

[1] *Sarah Backer*, 1 B. T. A. 214; *Norvin R. Lindheim*, 2 B. T. A. 229; *John Stephens*, 2 B. T. A. 724; *Columbus Bread Co.*, 4 B. T. A. 1126; *Great Northern Ry. Co.*, 8 B. T. A. 225; *Wolf Manufacturing Co.*, 10 B. T. A. 1161; *George L. Rickard*, 12 B. T. A. 836; *Atlantic Terra Cotta Co.*, 13 B. T. A. 1289.

sufficiently show, that it was ordinary for this petitioner to violate the statute or incur the fine in order to carry on its business. We can not ignore the fact, no matter how heartily we may disapprove it.

The revenue act was not contrived as an arm of the law to enforce State criminal statutes by augmenting the punishment which the State inflicts. In some instances, where Congress sought to use a taxing act to accomplish a nontaxing purpose, the attempt has failed. *Hill* v. *Wallace*, 259 U. S. 44; *Bailey* v. *Drexel Furniture Co.*, 259 U. S. 20. Cf. *Lipke* v. *Lederer*, 259 U. S. 557. And there is added reason for such a rule in respect of a local statute growing out of the economic policy of a State.

The statute was expressly designed to tax net income, irrespective of source. This has been held to permit a tax on income from prohibited occupations, *United States* v. *Yuginovich*, 256 U. S. 450; *United States* v. *Stafoff*, 260 U. S. 477; *United States* v. *Sullivan*, 274 U. S. 259. While it is true that in the *Sullivan* case the court intimates a question as to the deductibility of bribes; this falls short of authorizing a construction of the statute by which the tax would fall on something in excess of the net income expressly defined as the object of the levy. It is not necessary to consider whether Congress, had it so chosen, might have excluded these expenses from deductions, or imposed the tax upon a specially defined net income in respect of businesses founded on unlawful acts. See *Steinberg* v. *United States*, 14 Fed. (2d) 564. Sufficient that here Congress did not do so, but taxed only the net income which remained after deducting all ordinary and necessary expenses of carrying on the business. It did not shape its definition of income variously to conform to the different laws of the several States, *Burk Waggoner* v. *Hopkins*, 269 U. S. 110; *Weiss* v. *Wiener*, 279 U. S. 333; *Eagan Estate*, 17 B. T. A. 694. In my opinion, the entire amount of $7,510 was deductible.

MARQUETTE agrees with this dissent.