*1143 OPINION.
Trammell:
By agreement of counsel at the hearing only two issues are submitted for our determination. All other issues raised by the pleadings, including those relating to invested capital, are disposed of either by the admissions of the respondent or are waived by the petitioner. The issues before us for consideration are (1) whether the payments of the petitioner’s,Federal income and profits taxes for the years 1920 through 1923 by the lessee of its property constitute taxable income to the petitioner in the years for which the taxes were paid, and (2) whether there is to be included in the petitioner’s income for each of the years 1920 through 1923 an amount of $35,050.50, representing a one-ninety-ninth portion of $3,470,000, which is composed of $1,300,000 representing the cash bonus paid to the petitioner in 1888 for the execution of the lease to the Old Colony and $2,170,000 representing the amount of the petitioner’s indebtedness for the payment of which the Old Colony, in 1888, and the New Haven, in 1893, agreed to provide.
With respect to the first issue, the fifth paragraph of the lease of April 7, 1888, between the petitioner and the Old Colony contained the following provision:
And. the lessee shall also pay all taxes and assessments, whether in the nature of taxes, now in being or not, of every description, national, state and municipal, or otherwise, upon the property, business, franchises and capital stock of the lessor as the same shall be imposed or assessed, and shall at all times keep the lessor indemnified against the same during the term of this lease.
By the terms of the lease of February 15, 1893, the New Haven assumed the obligation imposed upon the Old Colony by the above quoted provision.
At some undisclosed date the question arose as to whether under the above provision the Old Colonji" was required to pay the Federal income tax of the petitioner. In Boston & Providence Railroad Corporation v. Old Colony Railroad Co., 169 N. E. 157, decided December 5, 1929, the Supreme Judicial Court of Massachusetts held that the provision did not impose on the lessee the obligation to pay such tax of the petitioner. The decision d,id not cover any of the years *1144 involved in the instant proceeding, nor did it direct the repayment by the petitioner to the Old Colony, or to the New Haven, or to anyone else, of any taxes previously paid for the petitioner. The petitioner admits that it has never repaid any portion of the taxes paid for it for any of the years here involved and there is nothing in the record to show that it will ever be. required to do so.
The petitioner contends that under the circumstances here presented the payments of its taxes by the New Haven do not constitute taxable income to it. It urges that the payments were not made as rent nor as compensation, but because of a mistake of law, and, not being in satisfaction of any obligation, do not constitute taxable income. The respondent contends that the payments constitute taxable income to the petitioner. He insists that the payments were made by virtue of the lease, notwithstanding the parties’ misinterpretation of it, that the petitioner received the benefit, of the payments, which were made under circumstances which prevent their recovery by the New Haven.
That the payment of Federal income taxes by the lessee for account of the lessor, as required by the terms of the lease, constitutes taxable income to the lessor is no longer open to question. United States v. Boston & Maine Railroad Co., 279 U. S. 732; Old Colony Railroad Co., 18 B. T. A. 267. The instant case, however, presents the question as to whether Federal income taxes paid by the lessee for the lessor under the mistaken belief that the lease required such payments constitute taxable income to the lessor where the lessor has not made restitution to the lessee on account of such payments or where there is no indication that it will ever be required to do so.
_ The decision of the Supreme Judicial Court of Massachusetts related to some undisclosed year subsequent to the years here involved. Under that decision it is clear that the payments involved in the instant case were not made in discharge or satisfaction of any obligation imposed by the lease, notwithstanding the fact that at the time they were made the parties apparently considered them to be such. At the time the payments were made the parties unquestionably considered them to be a part of the cost to the New Haven for the use of the petitioner’s railroad properties. No contention is made by the petitioner that there is an obligation on its part to make repayment to the New Haven, or to the Old Colony, or to anyone else, of the amount of the taxes paid for it, nor does it contend that it will be required to do so.
We think the situation here is similar to that in Chicago, Rock Island & Pacific Railway Co., 13 B. T. A. 988, wherein the taxpayer sought to have excluded from its taxable income certain amounts received by it from passengers in excess of its tariff rates. *1145 Such excess resulted principally from the station agents’ errors in computing the correct fares for passengers and was not refundable because the identity of the parties who had made the excess payments constituting the amounts in question was unknown. We there said:
The amounts received by petitioner were paid for the right to travel over its road. They were income unless the fact that the overcharges were unlawful takes these items out of that category. That such is not the ease see United States v. Sullivan, 274 U. S. 259. We can perceive no difference between an undercharge and an overcharge in this respect and we know of no provision in the Revenue Acts which requires a railroad to report a whole charge where it received only a part. The record is clear that it is impossible to discover to whom refunds should be made. The obligation to repay will not in the nature of things be discharged and from a common sense viewpoint the money will remain the property of petitioner subject to its free use and enjoyment. * * * Respondent did not err in including the above amounts in gross income.
See Chicago, Rock Island & Pacific Railway Co. v. Commissioner, 47 Fed. (2d) 990, wherein the Board’s decision on the above point was affirmed.
In the instant case the taxes paid for the petitioner were paid by the lessee for the use of the petitioner’s property. Such payments constituted an economic benefit to the petitioner, as it was thereby relieved of liabilities it would otherwise have to discharge. The petitioner still retains the benefits thus derived. We therefore are of the opinion that the payment of the petitioner’s taxes under the circumstances here presented constitutes taxable income to it.
In determining the deficiencies here involved the respondent has treated as income for each of the years the amount of the petitioner’s tax liability for such years, even though not due and payable until the succeeding year. In other words, he has treated as income for 1920 the tax liability for that year, as income for 1921 the tax liability for that year, and so on for 1922 and 1923. We think this was erroneous. Providence & Worcester Railroad Co., 5 B. T. A. 1186; Old Colony Railroad Co., supra. In recomputing the deficiencies there should be included as income for 1920 the amount of tax which became due and was paid in that year upon 1919 income. For 1921 there should be included as income the amount of tax which became due and was paid in that year upon 1920 income. The same rule should be followed with respect to the years 1922 and 1928.
In amended answers the respondent alleged that there should be included in the petitioner’s taxable income for each of the years before us an amount of $35,050.50 representing one ninety-ninth of $3,470,000. This latter amount is composed of $1,300,000 represent *1146 ing the cash bonus paid to the petitioner on or about May 1, 1888, by the Old Colony for the making of the lease of April 7, 1888, and $2,110,000 representing the amount of the petitioner’s indebtedness for the payment of which the Old Colony, in the lease of April 1, 1888, and the New Haven, in the lease of February 15, 1893, agreed to provide. In his. brief the respondent concedes that, in view of the provision contained in the thirteenth paragraph of the lease of April 7, 1888, that the petitioner was not to repay any part of the $1,300,000 in case the lease should be or become invalid or terminate without the fault of either party, there is no basis for contending that a portion of such amount should be included in the petitioner’s income for each of the years before us. In view of the respondent’s concession it will not be necessary to give further consideration to the item of $1,300,000.
With respect to the petitioner’s funded indebtedness of $2,170,000, for the payment of which the Old Colony and the New Haven agreed to provide, the respondent contends that an aliquot portion of such amount, or $13,131.13, should be added to the petitioner’s income for each of the years before us as additional rent. The petitioner contends that no part of the $2,170,000 should be added to its income for any of the years and relies on the decision of the Circuit Court of Appeals for the First Circuit in United States v. Boston & Providence R. R. Corporation, 37 Fed. (2d) 670. In that case the taxpayer, who is the petitioner in the instant case, was seeking to have its invested capital for 1918 increased on account of the agreement of the Old Colony and of the New Haven to pay the indebtedness involved. In disposing of the Government’s contention that the assumption of indebtedness was á part of the rental to be paid for the use of the property and should be prorated over the term of the lease, and in deciding that the petitioner was entitled to include in its invested capital the value of the agreement by which the indebtedness was assumed, the court said:
Neither do we think, if the agreement to- pay the petitioner’s funded debt can be treated as income, that it should be prorated over the term of the lease. An amount paid in advance as rental, or as a bonus for a leasehold interest, may be prorated by the lessee in computing his income tax over the period of the term, upon the ground that the interest acquired is an exhaustible capital asset, Galatoire Bros. v. Lines, (C. C. A.) 23 F. (2d) 676; Alland & Bros. Inc. v. United States (D. C.) 28 F. (2d) 792, or is a part of the rental; but as to the lessor in computing his tax, it is treated as income in the year in which received. O’Day Investment Co. v. Commissioner of Internal Revenue, 13 B. T. A. 1230; Miller v. Gearin (C. C. A.) 258 F. 225; Oryan v. Wardell (D. C.) 263 F. 248.
The crux of this case, of course, is whether the obligation to discharge the funded debt of the petitioner was income received in 1888, and, if so, whether *1147 its cash value in 1918 or any part of it could be treated as “ invested capital ” within the meaning of the Revenue Act.
* * * * * * *
While the case is not entirely free from doubt, we think the obligation to discharge the funded debt of the petitioner in this case was properly treated by the court below as income received when the lease was signed, at least to an amount equal to the fair cash value of the obligation. .
By the assumption of its funded indebtedness, * ⅜ * by a responsible third party as a part consideration for a leasehold interest in its properties, whether the obligation be viewed as so much additional rental or otherwise, a value was added to the net assets of the petitioner equal to the cash value of the obligation, which the court below found to be at least $2,000,000.
The respondent admits that the decision of the Circuit Court of Appeals is contrary to his contention in the instant case.
In amended answers the respondent admits the following allegations of fact contained in the amended petitions:
That the promise of the Old Colony to provide for the payment of the net indebtedness of the petitioner had a fair value on April 7, 1888, for purposes of the petitioner’s invested capital, equal to its face value of $2,170,000.
That the promise of the New Haven to provide for the payment of the net indebtedness of the petitioner had a fair value on February 15, 1893, for purposes of petitioner’s invested capital, equal to its face value of $2,170,000.
That the joint and several promise of the Old Colony and the New Haven to provide for the payment of the net indebtedness of the petitioner had a fair value on February 15, 1893, for purposes of petitioner’s invested capital, equal to its face value of $2,170,000. No distribution has ever been made by the petitioner, in stock, cash, or other property, of or on account of said asset, the same having remained a part of the earned surplus of the plaintiff continuously since its receipt or accrual in or prior to the year 1893.
If it be true, as conceded by the respondent, that.the promise here involved had the admitted value and has remained a part of the petitioner’s earned surplus since its receipt or accrual in or prior to the year 1893, we think that it would necessarily follow that no part of it was income in later years. The respondent’s admission is in conformity with the decision of the Circuit Court of Appeals.
We agree with the court that the conceded value of the promise to pay or relieve the petitioner from payment of the indebtedness was income prior to the taxable years. Nothing occurred during the years before us to give rise to any taxable income in so far as this transaction is concerned. Everything occurred prior to March 1, 1913. Prior to that time the petitioner had the benefit of the promise a,nd was enriched thereby. On March 1, 1913, this amount was a part of the capital of the petitioner and included in its surplus.

Judgment will ~be entered under Bule 50,