W. R. HERVEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46806.   Promulgated April 26, 1932.

*John B. Milliken, Esq.*, and *George H. Koster, Esq.*, for the petitioner.

*Philip M. Clark, Esq.*, for the respondent.

1286

OPINION.

SMITH: The petitioner contends, in effect, that he realized no income by reason of the cash and stock distributions by the syndicate or pool manager in 1926 and 1927, but that in the event it is held that he did realize income from such distributions, he sustained

a deductible loss in an equivalent amount in 1927. The respondent takes the position that the taxpayer realized income in 1926 in the amount of the cash distributions in that year, and realized income in 1927 to the extent that the cash received in that year exceeded his contribution to the pool, plus the 2,150 shares of the preferred stock valued at $9 per share. Respondent further contends that the amount paid to the receivers by the petitioner in settlement of their claim is not deductible, since it was a personal loss and not a loss growing out of the petitioner's investment in the stock pool.

Our problem is, therefore, to determine whether the transactions set forth in our findings constitute one continuing transaction, the result of which was neither gain nor loss, or whether they were separate and distinguishable transactions, the result of which in each instance was either gain or loss. The practical effect may be the same in either case, but the resulting tax liability may be quite different. Cf. *Anna M. Harkness*, 1 B. T. A. 127; *United States* v. *Isham*, 17 Wall. 496. The nature of each transaction is determinable from the facts relating to it, and is not changed because of its association with other transactions in a larger and more comprehensive plan. Cf. *William H. Mullins*, 14 B. T. A. 426. To carry the petitioner's contention to its logical conclusion would be to treat the payments to the receivers as being comprehended by the general plan of the syndicate or pool, and hold that the plan and purpose of the pool was not to make a profit for the petitioner and his associates.

In the case of *J. D. Bigger*, 19 B. T. A. 797, the Board held that the taxpayer's capital contribution to a syndicate for the acquisition of certain oil and gas leases constituted a closed transaction and that he realized a taxable gain upon the exchange of his interest in the syndicate for shares of stock in the operating corporation to which the leases were transferred. Had there been but one distribution in the instant proceeding, and that in 1927, in the amount of $158,064.40 in cash and 2,150 shares of stock, no one would seriously contend that petitioner, having recovered the full amount of his capital investment in cash, did not realize a taxable gain to the extent of the amount of the excess of the distribution over the amount of his investment. In the circumstances, we hold that for tax purposes the transactions here involved are separate and distinguishable. *J. D. Bigger*, *supra*, and cases there cited.

On September 22, 1926, the petitioner contributed $100,000 to the syndicate or pool for the purchase of stock of the Julian Petroleum Corporation at a specified price. In this manner he made his capital investment by which he acquired either an undivided interest in the syndicate (see *J. D. Bigger*, *supra*) or a proportionate amount of the stock purchased by the syndicate or pool (see *William K. Dick et al.*,

*Executors*, 20 B. T. A. 637). The syndicate bought 64,517 shares of the stock at $15.50 per share, which Lewis and A. C. Wagy & Company, Inc., agreed to repurchase, and, as a guaranty to the syndicate against loss, deposited with the syndicate a like number of shares of this stock. On December 9, 1926, Lewis and A. C. Wagy & Company, Inc., being unable to carry out their agreements to repurchase the stock at $18.50 per share, made a further agreement for the repurchase of the stock and paid over to the syndicate $3 per share as a " present profit * * * in the transaction." The new agreement provided for the repurchase of the stock at prices that advanced $1 per share for each period of 10 days that elapsed before the repurchase. After December 30, 1926, the repurchase price was not less than $18.50 per share. At the close of the taxable year 1926, petitioner had received a cash distribution of $19,354.80 upon his interest in the pool. The 64,517 shares of the stock purchased at $15.50 were subject to an agreement to sell at $18.50, and this agreement was guaranteed by the deposit of the same amount of the stock. In other words, the parties to these transactions at the close of the year 1926 were in the same position that they were in prior to the payment of $3 per share to the pool, which in substance was in the nature of a forfeit for failure to carry out the agreement to repurchase. Upon the distribution to the petitioner, he realized a gain which was segregated from his capital investment—he had neither parted with nor diminished his interest in the syndicate or the stock. See *Cullinan* v. *Walker*, 262 U. S. 134, 137. In the circumstances, there being no sale of the stock in 1926 such as would entail the return of the capital investment before there could be a realized gain (cf. *Burnet* v. *Logan*, 283 U. S. 404), we believe that the cash distribution in 1926 was just what the parties said it was, viz., a present profit upon the transaction. The respondent's determination that the amount so received in 1926 is taxable income of 1926 is sustained.

In much the same manner petitioner received in 1927 cash distributions prior to the liquidation of the pool in that year. The pool was completely liquidated in 1927 and the petitioner received cash in the amount of $138,709.60 and 2,150 shares of preferred stock of the Julian Petroleum Corporation, which the respondent has valued at $9 per share. The net result of the distributions prior to and in liquidation of the pool was that the petitioner realized income to the extent that these distributions exceeded his capital investment. The respondent's inclusion of the amount of this gain in petitioner's income for 1927 is sustained.

However, later in the taxable year 1927, the petitioner was required to turn over all of his profits to the receivers of the Julian Petroleum Corporation or be prosecuted for violation of the usury laws of the

State of California. Although admitting no violation of the statute, the petitioner chose to surrender the cash and stock to the receivers upon the condition that they would forego suit against him. This was the aftermath of the stock pool transaction, entered into for profit, and having found that petitioner realized income in the taxable years from his interest in the pool or the stock, he, as a result of turning over to the receivers in 1927 cash in the amount of $58,064.40 and 2,150 shares of stock valued at $9 per share, sustained a deductible loss.

The statute permits the deduction of " losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business." (Section 214 (a) (5) of the Revenue Act of 1926.) Admittedly, the petitioner's investment in the pool was a transaction entered into for profit. It seems to us, too, that the compromise settlement with the trustees was directly related to this transaction. Certainly, the loss was not a personal loss in the sense that it was disassociated from any business transaction, nor did it result from any patently wrongful and extrinsic act on the part of the petitioner such as perjury (see *Sarah Backer et al., Executors*, 1 B. T. A. 214). The petitioner's payment to the trustees was in settlement of an alleged civil liability which was predicated upon the very substance of the transaction upon which the profits were computed. It was not in the nature of a fine for violation of a criminal statute as in *Columbus Bread Co.*, 4 B. T. A. 1126. No criminal action against the petition had been proposed.

The discussion in *Kornhauser* v. *United States*, 276 U. S. 145, of proximity of cause as related to business expense deductions is pertinent. The court said:

In the *Appeal of F. Meyer & Brother Co.*, 4 B. T. A. 481, the Board of Tax Appeals held that a legal expenditure made in defending a suit for an accounting and damages resulting from an alleged patent infringement was deductible as a business expense.

The basis of these holdings seems to be that where a suit or action against a taxpayer is directly connected with, or, as otherwise stated (*Appeal of Backer*, 1 B. T. A. 214, 216), proximately resulted from, his business, the expense incurred is a business expense within the meaning of section 214 (a), subd. 1, of the act. These rulings seem to us to be sound and the principle upon which they rest covers the present case. * * *

This principle would seem to apply with equal effect in the case of losses, the evident purpose of the statute being to allow the deduction of both the ordinary and necessary expenses and the losses incident to the business or transaction which has yielded the profits to be taxed.

In a number of cases we have denied the deduction as business expenses of fines, penalties, and legal expenses arising from violations of various regulatory and criminal laws. See *Sarah Backer*

*et al., Executors, supra; John Stephens,* 2 B. T. A. 724; *Columbus Bread Co., supra; Great Northern Railway Co.,* 8 B. T. A. 225; affd., 40 Fed. (2d) 372; *Atlantic Terra Cotta Co.,* 13 B. T. A. 1289; *Burroughs Building Material Co.,* 18 B. T. A. 101; affd., 47 Fed. (2d) 178. The necessity for the rule is laid to the statutory limitation of deductible expenses to the "ordinary" and "necessary" expenses, which terms are said to exclude the expenses arising from unlawful acts. The statute, however, does not use these restricting terms in providing for the deduction of losses. With exceptions not here material, it authorizes the deduction of all losses incurred in trade or business (section 214 (a) (4), Revenue Act of 1926), or incurred in any transaction entered into for profit (section 214 (a) (5), Revenue Act of 1926). The term "loss" is said to be a comprehensive one. *Ernest E. Lloyd,* 8 B. T. A. 1029. In *Electric Reduction Co.* v. *Lewellyn,* 11 Fed. (2d) 493, the court described a loss as a "failure to keep that which one has."

In *Burroughs Building Material Co.* v. *Commissioner, supra,* the court said that "the disallowance may properly rest on a refusal to sanction expenditures of such a character as we have here on grounds of public policy." The expenditures referred to were fines and attorneys' fees paid in connection with prosecution or indictment for participating in a price-fixing agreement in violation of the laws of New York. We do not understand, however, that the laws of California prohibit the operation of or the participation in stock pools of the character under consideration in this proceeding, nor do we think that it can be said that such a transaction is *malum in se* or contrary to public policy.

In the cases cited, where the deductions have been disallowed, the transactions involved were all illegal. In other cases, where the illegality of the transactions was not established, similar deductions have been allowed, as in *Huff, Andrews & Thomas,* 1 B. T. A. 542, where the taxpayer, although denying his guilt, was accused of violating the United States Food Control Act and required to pay a fine of $5,000 to the Red Cross or have its license canceled. See also *Superheater Co.,* 12 B. T. A. 5; *Continental Screen Co.,* 19 B. T. A. 1095; *H. M. Howard,* 22 B. T. A. 375; *Matson Navigation Co.,* 24 B. T. A. 14.

We have reached the above conclusions in the manner stated because the tax liability for each taxable year must be determined upon the basis of the transactions occurring within the year (see *Florence B. Fawsett,* 23 B. T. A. 1147), and although we have both taxable years before us, we do not deem it proper, for tax purposes, to hold

that the net result of the transactions was neither gain nor loss to the petitioner. He realized gains in both taxable years, and sustained a loss in 1927; he should be taxed accordingly.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*