*993 OPINION.
Black :
The first issue is whether the respondent erred in disallowing as a deduction from petitioner’s gross income for the calendar year 1930 “Excess depreciation on Burton patents” in the amount of $618,587.18. Petitioner claimed $686,247.51 and respondent allowed $67,687.33.
On March 1, 1913, petitioner owned an invention known as the Burton Process for the cracking of gasoline. This invention was patented January 7,1913, under the patent laws of the United States as patent No. 1,049,667. Also on March 1,1913, petitioner owned two applications for patents. One application was filed with the United States on September 23, 1912, and was for an improvement on the Burton Process patent. This improvement was patented March 11, 1913, under the laws of the United States as patent No. 1,055,707. The other application was filed with the Dominion of Canada on December 20,1912, and was for the same invention which was the subject matter *994 of patent No. 1,049,667. This invention was patented April 8, 1913, under the laws of Canada as patent No. 147,094, and, pursuant to the laws of that country, this patent expired on April 7, 1931.
The parties to this proceeding have stipulated that:
As of March 1, 1913 petitioner, Standard Oil Company (Indiana) owned an invention known as the Burton Process for the cracking of gasoline. On January 7, 1913 the United States Government had issued a patent on the said invention to “William M. Burton, of Chicago, Illinois, assignor to Standard Oil Company of Whiting, Indiana, a corporation of Indiana.” A true and correct copy of said patent is attached hereto as Exhibit A and a true and correct copy of William M. Burton’s assignment to petitioner is attached hereto as Exhibit A-l. The fair market value as of March 1, 1913 of the said Burton Process patent was $70,000,000. * * *
Both parties agree, as stated in their respective briefs, that: “The real question here is: How much of petitioner’s $70,000,000.00 basis should be recognized as remaining at January 1, 1930?”
The amount of $686,274.51 claimed by petitioner is exactly equal to 2/i2 of y17 of $70,000,000. It is accordingly manifest that petitioner has proceeded on the theory that its $70,000,000 basis as of March 1,1913, should be exhausted over a period of exactly seventeen years from March 1, 1913, and that the amount claimed represents exhaustion for the two months of January and February, 1930. The amount allowed in the deficiency notice, $67,687.33, is exactly equal to %65 of %7 of $70,000,000.
Petitioner contends (1) that respondent’s action for 1930 was arbitrary and without rational foundation; (2) that respondent is estopped from asserting that petitioner’s basis should be reduced by additional charges for prior years; and (3) that in any event, respondent’s allowances in prior years were reasonable and should be used in determining petitioner’s remaining basis as of January 1, 1930, unless respondent can show that the action in prior years was wrong, i. e., that the facts as stipulated will not admit of any interpretation which would support the action in prior years.
In support of its contention that respondent’s action was arbitrary and without rational foundation petitioner argues that the effect of respondent’s determination of allowing only %65 of the annual amount which he had allowed for each of the years 1918 to 1929, inclusive, “leaves him in the implied and absurd position of saying that petitioner had an exhaustible patent value as of March 1, 1913, of $70,000,000.00, but that- $618,587.18 of that vaíue must have been exhausted prior to that date.” Petitioner further argues that, even on the basis that petitioner’s patent exhaustion period ended with the expiration of the basic patent, rather than February 28, 1930, as petitioner contends, the respondent also erred in determining the expiration date to be January 6, 1930, instead of January 7, 1930, citing *995 Burnet v. Willingham Loan & Trust Co., 282 U. S. 437, and cases cited therein. Petitioner then contends that, by pointing out these obvious eiTors on the part of the respondent, it has brought respondent squarely within that part of the Supreme Court’s decision in Helvering v. Taylor, 293 U. S. 507, wherein the Court said:
* * * The fact that the Commissioner’s determination of a deficiency was arbitrarily made may reasonably be deemed sufficient to require the Board to set it aside.
We fail to see wherein Helvering v. Taylor is of any help to petitioner, for in that case the Supreme Court also said: “Frequently, if not quite generally, evidence adequate to overthrow the Commissioner’s finding is also sufficient to show the correct amount, if any, that is due.” The parties have agreed upon the facts with reference to the Burton Process patent and it remains only for the Board correctly to apply the law to those facts. Under these circumstances Helvering v. Taylor has no application.
The respondent, in his brief, now concedes that he “did not correctly compute the amount of the basis remaining at J anuary 1, 1930, and consequently the allowable depreciation for the six-day period in the taxable year, in that he used %7 of $70,000,000.00 as the annual depreciation charge, whereas the life of the patent from March 1, 1913, to its expiration date was only 16 and 31%65 years.” He now contends that the remaining basis at J anuary 1, 1930, and the allowable depreciation for 1930, should be computed as follows:
3§5°f (163^I6¡) of $70,000,000=$68,270.47.
In making this concession the respondent rejected petitioner’s suggestion that January 7, 1930, be treated as the expiration date of the Burton Process patent. He argues that if January 7, 1930, be treated as the expiration date “it would be necessary either to refuse depreciation for the date on which a patent is issued, or to allow depreciation for a life of seventeen years and one day.”
Every patent grants to the patentee, his heirs or assigns “for the term of seventeen years,” the exclusive right to make, use, and vend the invention or discovery throughout the United States and the territories thereof. See U. S. Code, title 35, sec. 40. Upon the reasoning of the Supreme Court in Burnet v. Willingham Loan & Trust Co., supra, we hold that the Burton Process patent expired on January 7, 1930. It may be noted in passing that the same rule apparently does not prevail in Canada, for the Canadian patents offered in evidence in this proceeding have the expiration date recorded therein, which is eighteen years from the date of issue, counting the day of issue as the first day of the period. In the instant proceeding, it is our opinion that the first day of the seventeen-year period of the Burton *996 Process patent was January 8, 1913. If, therefore, the remaining basis at January 1,1930, and the allowable exhaustion for 1930, should be computed as now suggested by the respondent, it will be necessary to revise his computation, as follows:
¿ of (i63i3/365) of $70,000,000=$79,635.95
Petitioner, however, strongly contends that it should be allowed the entire amount of $686,274.51, upon the ground that the exhaustion period was seventeen years from March 1, 1913, to February 28, 1930, both dates inclusive, and not 1631%65 years from March 1, 1913, to January 7, 1930, both dates inclusive. But petitioner’s argument in this connection assumes as the major premise a fact which is not a fact in this record, namely, that the $70,000,000 value was the value on March 1, 1913, of the Burton Process patent and the two applications that were pending on that date. In its brief petitioner says:
It is at once apparent, therefore, that we are.not here considering just one patent, the original patent issued January 7, 1913. If that constituted the only property rights which petitioner had at March 1, 1913, or at any other time with respect to the Burton process and pressure stills, there would1 probably be no question as to the life of the '$70,000,000.00. We have here, however, not only the original patent, but also an application for a Canadian patent thereon, an application for a United States patent on an improvement, and a preemptive right to a Canadian patent on the improvement.
Under the facts as stipulated it becomes immaterial that petitioner on March 1, 1913, owned two patent applications in addition to the Burton Process patent. If the value of $70,000,000 agreed to by petitioner and respondent in 1928 was intended to represent the combined value of the Burton Process patent and the two applications, and if the allowances for the years 1918 to 1929 were intended to represent the allowable deductions for exhaustion of the Burton Process patent and the two applications, the record certainly does not show such to be the facts. Our decision on this issue must rest on the facts. The statements in the deficiency notice referring to “patents” are not on the whole inconsistent with the stipulation, and if they were, the stipulation would control. We need only to apply the law to the facts as stipulated.
Section 23 (k) of the Bevenue Act of 1928, in so far as is material, provides:
SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
*******
(k) Depreciation. — A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. * * *
*997 Article 207, Regulations 74, in so far as is material provides:
Aet. 207. Depredation of patent or copyright. — In computing a depreciation allowance in the ease of a patent or copyright, the capital sum to be replaced is the cost or other basis of the patent or copyright. The allowance should be computed by an apportionment of the cost or other basis of the patent or copyright over the life of the patent or copyright since its grant, or since its acquisition by the taxpayer, or since March 1, 1913, as the case may be. * * * The fact that depreciation has not been taken in prior years does not entitle the taxpayer to deduct in any taxable year a greater amount for depreciation than would; otherwise be allowable. * * *
The above regulation has the force and effect of law. Hazeltine Corporation v. Commissioner, 89 Fed. (2d) 513, 521.
In the instant proceedings the capital sum to be replaced in connection with the Burton Process patent is $70,000,000, the fair market value of that patent as of March 1, 1913. This capital sum must be apportioned over the life of the patent since March 1, 1913. As we have already held, the life of the Burton Process patent expired on January 7, 1930. The proper apportionment for the seven days in 1930, is, as we have indicated above, the amount of $79,635.95. This much of petitioner’s $70,000,000 basis remained on January 1, 1930. We hold, therefore, that the amount of $79,635.95 should be allowed petitioner as a deduction from its gross income for the calendar year 1930 on account of exhaustion or depreciation of its Burton Process patent instead of the amount of $67,687.33 allowed by respondent in his deficiency notice.
On the basis of the correct apportionment for each full year of ■...J,, — r- of $70,000,000 instead of one-seventeenth thereof, peti-(10^7365) tioner would have been entitled to a deduction of $4,152,445.96 for each of the years prior to 1930 instead of the amount of $4,117,-647.06 allowed by the respondent. This fact, however, does not entitle petitioner to deduct in the taxable year a greater amount than would otherwise be allowable. Art. 207, Regulations 74, supra; cf. Burnet v. Thompson Oil & Gas Co., 283 U. S. 301.
The second issue is whether the respondent erred in disallowing as a deduction from gross income the' amount of $2,901,865.46 claimed by Stanolind on its return for the period January 1 to September 21, 1930. This issue becomes material by reason of the fact that on September 22, 1930, Stanolind became a 100 percent owned subsidiary of petitioner, which fact entitles petitioner in arriving at the consolidated net income for the calendar year 1930 to deduct any statutory net loss sustained by Stanolind for the period immediately preceding affiliation. Sec. 117, Revenue Act of 1928; art. 41 (c), Regulations 75. Stanolind reported a net loss of $3,715,123.57 for the period January 1 to September 21, 1930, and the effect of respondent’s disallowance of the claimed deduction of *998 $2,901,8.65.46 now under consideration was to reduce Stanolind’s reported net loss by a like amount.
In a statement attached to the deficiency notice set out in full in our findings under paragraph 42, the respondent gave as his reason for disallowing the claimed deduction of $2,901,865.46 the fact that the amount represented a judgment obtained by the United States against Mammoth which was voluntarily paid by Stanolind. The stipulation of facts clearly shows that this was an erroneous finding on the part of the respondent, and respondent now concedes as much. The true facts are that the judgment obtained by the United States against Mammoth in the Wyoming suit has never been paid, except for the small amount of $3,509.19, and that the $2,901,865.46 here in question represents a judgment for $2,906,484.32 (less a recoupment of $4,618.86) which the United States obtained against Stano-lind in the Delaware suit on May 28, 1930, and which Stanolind paid to the United States on June 2, 1930. Although the respondent was mistaken in his determination of the deficiency as to what the amount of $2,901,865.46 actually in fact represented, he now contends that the amount should nevertheless be disallowed for the reason that, in view of what the Supreme Court, in Mammoth Oil Co. v. United States, 215 U. S. 13, 53, held with regard to Stanolind’s participation in the illegal scheme, it would be against public policy to allow Stanolind to deduct from its gross income an amount which it was compelled to pay on account of such participation.
At the outset petitioner contends that, since the respondent has changed his reasons as to why the amount of $2,901,865.46 should not be allowed as a deduction from gross income, the burden is upon the respondent to both plead and prove the facts necessary to support the disallowance upon the new ground. In support of this contention petitioner cites Alexandria Gravel Co. v. Commissioner, 95 Fed. (2d) 615, and T. G. Nicholson, 88 B. T. A. 190, 198. These cases do not support such a contention. The issue here is Stanolind’s right to the deduction sought. Upon that issue petitioner has the burden of pleading and proof. Burnet v. Houston, 283 U. S. 223; Welch v. Helvering, 290 U. S. 111. The respondent correctly argues in his brief that “Deductions may be disallowed by the Commissioner without assigning any reason or theory for his action and if he assigns a reason or advances a theory in his deficiency notice, though it be erroneous, he is not restricted thereto in his defense of an appeal to the Board asserting such disallowance as error.” Cf. Edgar M. Carnrick, 21 B. T. A. 12, 21; Crowell v. Commissioner, 62 Fed. (2d) 51, 53; James P. Gossett, 22 B. T. A. 1279, 1284; affd., 59 Fed. (2d) 365; rehearing denied, 60 Fed. (2d) 484; John I. Chipley, 25 B. T. A. 1103, 1106; Charles J. O'Laughlin, 30 B. T. A. 1327; affd., 81 Fed. (2d) 289; Alexander Sprunt & Son, Inc. v. Commissioner, 64 Fed. (2d) 424, 427; Raoul H. Fleisch *999 mann, 40 B. T. A. 672. Petitioner was not taken by surprise. In his opening statement to the Board, counsel for respondent said that, on the question of the deductibility of the payment by Stanolind, the respondent had two positions, namely, (1) that as a matter of public policy the deduction was not permissible, and (2) that in any event the amount of $2,901,865.46 should be excluded from Stanolind’s not loss for the period immediately preceding affiliation because it was not of such a character as may be carried forward as a net loss under section 117 (a) (1) of the Revenue Act of 1928. All of the facts upon which the respondent relies are in the record. Consideration of those facts is not precluded by reason of the absence of a special pleading on the part of the respondent. If, upon the consideration of all the evidence, petitioner has failed to establish Stanolind’s right to the claimed deduction, the respondent’s disallowance thereof must stand, even if it be for a reason other than that given in the deficiency notice.
Aside from the public policy feature of the case, petitioner contends that the payment in question falls squarely within the general rule that payments made in connection with, or as a result of, litigation affecting the taxpayer’s business are deductible in computing taxable net income; that the part of the payment in question representing principal was deductible either as an expense, loss, or bad debt under subsection (a), (f), or (j), respectively, of section 23 of the Revenue Act of 1928; and that the part representing interest was deductible as interest under subsection (b) of the same section. These contentions, however, become unimportant if the respondent is upheld in either one of his two positions mentioned in the preceding paragraph. Lawrence A. Wagner, infra.
We shall, therefore, consider first the respondent’s position that it would be against public policy to allow any deduction for the item in question, because of the Supreme Court’s decision in Mammoth Oil Co. v. United States, supra.
In approaching the position that an allowance of any part of the $2,901,865.46 as a deduction from Stanolind’s gross income would be against public policy, the respondent in his brief says: “The factual question, with which this appeal is concerned, is the Dad faith and/or fraud of Stanolind. A direct finding on that subject should be made. The evidence to be considered includes the intire record in the Wyoming suit. If, from an examination of hat record, it is found that the question of the bad faith and/or fraud of Stanolind was there presented and decided, this Board s bound to so find in this case if such a finding is material, as respondent contends it to be.” Later in his brief the respondent ■equests a direct finding on this subject, as follows:
(13). The lease and agreement were executed without warrant or authority f law and contrary to the policy of the Federal Government to conserve its *1000 petroleum resources. The lease and agreement were fraudulent. Stanolind is charged with notice that those instruments were executed contrary to law, and with knowledge of the fraud perpetrated. Stanolind acted in bad faith and as a mala fide trespasser upon the Government-owned lands in acquiring the oil in question.
The basis for the above requested finding is, as counsel for respondent says, “the entire record in the Wyoming suit.” There are in evidence in this proceeding true copies of all the pleadings filed in the Wyoming suit, the Teapot Dome lease, the supplemental agreement of February 9, 1923, the order of the District Court appointing the receiver, the argument made before the District Court, the briefs filed before the Eighth Circuit and Supreme Courts on behalf of Stanolind, a reference to the volume and page in the printed imports of the decisions of the District, Circuit, and Supreme Courts, respectively, the mandate of the Supreme Court, and the final decree of the District Court.
We think that the holdings of the Eighth Circuit and Supreme Courts in the Mammoth case, that Stanolind was a mala fide trespasser, that Stanolind was presumed to have known that no law authorized the making of the lease, that the use of the tanks by Stanolind to. take oil from the Government’s reserve was a part of the illegal scheme, that Sinclair’s knowledge of the conspiracy to defraud was imputed to Stanolind, and that the lease and supplemental agreement were fraudulently made to circumvent the law and to defeat public policy, are res judicata, as to those matters in the instant proceeding.
Three principal objections to respondent’s requested finding No. 13 (our finding No. 44) are argued by petitioner. They are: (1) that the doctrine of res judicata is not available to respondent because he has not specially pleaded it; (2) that Stanolind’s good faith or bad faith was not an issue in the Wyoming suit; and (3) that the character of the payment in question for tax purposes must be determined and limited by the pleadings and proceedings in the Delaware suit. We shall consider these objections in the order given.
We think petitioner’s first objection is without merit. The rule with respect to this subject is stated in 34 C. J. 1056, 1066 as follows:
* * * Where a second suit between the same parties involves a different cause of action which depends upon the existence or nonexistence of a fact adjudicated in the first suit, the judgment rendered in the first casé, being evidence showing or tending to show that fact, may be introduced, even though it is not specially pleaded.
* * * * * * *
* * * Moreover, where the judgment is relied on, not as a bar to the present action, but as a judicial determination of given facts, issues, or controversies, it is not necessary to plead it specially, but it is conclusive when given in evidence.
*1001 The rule is stated by the Supreme Court in Southern Pacific Railroad Co. v. United States, 168 U. S. 1, at page 48, to be:
The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question, or fact, once so determined, must, as between the same parties or their privies be taken as conclusively established, so long as the judgment in the first suit remains unmodified.
The parties, Stanolind and the United States, are the same in the instant proceedings as they were in the Wyoming suit. Cf. Tait v. Western Maryland Railway Co., 289 U. S. 620; Sunshine Anthracite Coal Co. v. Adkins, 310 U. S. 381. The instant proceeding involves a different cause of action. If, therefore, the present cause of action, namely, the right of Stanolind to deduct the amount paid in settlement of the Delaware judgment, depends upon the existence or nonexistence of a fact adjudicated in the Wyoming suit, namely, the good faith or bad faith of Stanolind, the Wyoming judgment may be introduced, even though it is not specially pleaded, and when given in evidence it is conclusive of the fact adjudicated. Southern Pacific Railroad Co. v. United States, supra (see pages 59 and 60 of that opinion).
Petitioner’s second principal objection to respondent’s requested finding No. 13 is, we think, likewise without merit. The opinion of the Supreme Court in the Wyoming suit, in so far as it applies to Stanolind, is set out in paragraph 21 of our findings. We do not think the Supreme Court intended these statements to be obiter dicta. In the separate brief which Stanolind filed on its behalf in the Supreme Court in the Wyoming suit, Stanolind alleged that the Court of Appeals erred (1) “in finding that there was any evidence as matter of law to establish fraud in the making of the lease of April 7th, 1922, and the supplemental agreement of February 9th, 1923”; (2) in holding that Stanolind “was a trespasser mala fides on the government land, as no fraud was alleged or proved as to it”; (3) in holding that Stanolind “should be enjoined and restrained from entering upon Naval Petroleum Eeserve No. 3”; and (4) in enjoining and restraining Stanolind “from entering upon Naval Petroleum Eeserve No. 3 without affording it the right to remove from said reserve the property it had in good faith purchased and constructed thereon.” If Stanolind’s transactions with Mammoth had been in good faith, as Stanolind contended before the Supreme Court, it seems clear that it would have been permitted to remove its seventeen tanks that were located on the lands covered by the Teapot Dome lease. There can be no doubt but that Stanolind’s good faith or bad faith in its transactions with Mammoth was an issue in the Wyoming suit and that the issue was decided adversely to Stanolind.
*1002 Neither are we impressed with petitioner’s third principal objection to respondent’s requested finding No. 13. Under this heading petitioner emphasizes all the facts directly pertaining to the Delaware suit, as it is the amount of the judgment which the United States obtained against Stanolind in that suit which Stanolind seeks to deduct from its gross income. Petitioner argues that the Board should look no further than the Delaware suit in determining whether Stanolind’s transactions with Mammoth were made in good or bad faith, and that when this is done no finding of bad faith can be made. Petitioner points to the letter of April 3,1930, which counsel for the United States wrote to the United States Senate recommending that Stanolind’s offer to terminate the suit be accepted. (See paragraph 37 of our findings.) It particularly emphasizes the portions which say that “this suit was for the conversion of the oil by the Sinclair Crude Oil Purchasing Co. based upon the theory that as the Mammoth Oil Co. had never acquired a valid title to the leasehold it could not give good title to the oil taken therefrom”, and “Under the proposed arrangement the Government is, we think, getting as favorable a result as it could get by pursuing the litigation to judgment and execution.” Petitioner says there is no suggestion of bad faith on Stanolind’s part in that letter. The United States Senate accepted Stanolind’s offer (see findings, par. 34) to terminate the Delaware suit. By so doing petitioner argues that the United States in effect dropped all the allegations of fraud and bad faith on the part of Stanolind, for the settlement included only the value of the oil as represented by the prices which Stanolind had paid Mammoth, less the value of the tanks which were the subject of the litigation in the Wyoming suit, and included nothing for the exemplary or punitive damages asked for in counts 2 and 3 of the Delaware suit. Petitioner further argues that, if the Wyoming suit adjudicated Stanolind’s good or bad faith in its transactions with Mammoth in the manner contended for by the respondent, then counsel for the United States in the Delaware suit did not obtain for the United States all that the latter were entitled to, in that, if Stanolind were guilty of had faith, it should not have been given credit for the seventeen tanks and should have been assessed exemplary or punitive damages, as alleged in counts 2 and 3 of the declaration.
We do not think it is necessary to enter upon a discussion of the reasons which caused the Congress to accept Stanolind’s offer to terminate the Delaware litigation. Suffice it to say Stanolind’s good or had faith in its transactions with Mammoth was not litigated in the Delaware suit, that suit being settled by compromise, whereas it was litigated in the Wyoming suit and passed upon by the United States Supreme Court. Stanolind’s good or bad faith in its transactions with Mammoth is now an issue of fact in the instant proceedings. That issue having been litigated and adjudicated in the Wyoming suit *1003 and the record in that case having been offered and received in evidence in the instant proceedings, the judgment of the Supreme Court determining that issue is conclusive here. Southern Pacific Railroad Co. v. United States, supra. We, therefore, grant respondent’s requested finding No. 13, which is set out in paragraph 44 of our findings.
Under the facts found in our findings, would it be against public policy to allow Stanolind to deduct from its gross income any part of the payment of $2,901,865.46 here in question?
Deductions are frequently disallowed upon the ground that it would be against public policy to allow them. The cases uniformly hold that fines paid because of violation of law are not deductible. Great Northern Ry. Co. v. Commissioner, 40 Fed. (2d) 312; certiorari denied, 282 U. S. 855; Burroughs Building Material Co. v. Commissioner, 47 Fed. (2d) 178; Chicago R. I. & P. Ry. Co. v. Commissioner, 47 Fed. (2d) 990; certiorari denied, 284 U. S. 618; Tunnel R. R. of St. Louis v. Commissioner, 61 Fed. (2d) 166; certiorari denied, 288 U. S. 604. In the Burroughs case the Second Circuit said: “The disallowance may properly rest on a refusal to sanction expenditures of such a character as we have here on grounds of public policy.”
In Easton Tractor & Equipment Co., 35 B. T. A. 189, we held that certain commissions paid by the taxpayer to an agent who was to use his personal influence with the state government ,in making sales could not be deducted from gross income because the agreement under which the commissions were paid was void as against public policy. To the same effect is T. G. Nicholson, supra.
In Lawrence A. Wagner, 30 B. T. A. 1099, the Board sustained the disallowance of a deduction of a loss arising from the operation of a loan business prohibited by state statutes “upon the ground of public policy” and said that “In our view it is immaterial whether the deduction is classified as an ordinary and necessary expense or as a loss.”
On the other hand, deductions have been allowed in Commissioner v. Continental Screen Co., 58 Fed. (2d) 625, involving attorney fees paid for the successful defense of a charge of operating in violation of the Sherman Act; W. B. Hervey, 25 B. T. A. 1282, involving cash profits and stock surrendered by Hervey in order to avoid a suit threatened by the receivers of a corporation whose stock had been dealt in by a syndicate or pool composed of Hervey and his associates, the receivers charging that the members of the syndicate or pool had violated the usury laws of the State of California; Foss v. Commissioner, 75 Fed. (2d) 326, involving attorney fees paid by Foss in unsuccessfully defending a suit in equity brought against him by the minority stockholders of a corporation in which Foss was the majority stockholder, alleging that Foss and certain others were in combination to waste the assets of the corporation and to violate the Sherman Anti *1004 Trust Act; Helvering v. Hampton, 19 Fed. (2d) 358, involving the amount paid in settlement of a judgment against Hampton and in favor of a lessee upon the cancellation of a lease for fraud in a prior tax year in negotiating for the lease and for other expenditures claimed by Hampton to have been made in defense of the suit; Alexandria Gravel Co. v. Commissioner, supra, involving commissions paid to a state senator as salesman on sales to the state highway commission in the absence of evidence that the state senator agreed or attempted to use any personal or political influence in making the sales; and International Shoe Co., 38 B. T. A. 81, involving attorney fees and an amount paid in settlement of a suit for damages brought against petitioner and its officers and directors by the Menzies Shoe Co.
Petitioner makes the statement in its brief that in most of the cases where the claimed deduction was denied upon the ground of public policy the particular taxpayer involved was charged with conduct that either was or could have been made the subject of criminal action. It contends that these cases can not be applied to the instant proceeding, because: “First, Stanolind was never guilty of, nor charged with even reprehensible conduct, much less conduct which could have been made the subject of criminal action; Second, there not only has never been any determination or admission, either actual or implied, that Stanolind was guilty of criminal or reprehensible conduct, but the record completely negatives culpability on its part; Third, the payments certainly can not be said to have been made for the purpose' of influencing legislative, or. any other kind of Governmental, action.” In support of these contentions petitioner relies particularly upon W. B. Harvey; Helvering v. Hampton; and International Shoe Co., all supra.
We do not deem it necessary in this proceeding to determine whether Stanolind’s participation in the illegal scheme to defraud the United States of its oil could have been made the subject of a criminal' action. The Supreme Court held in the Wyoming suit, in which Stanolind was a party defendant, that the lease and supplemental agreement between Mammoth and the United States were fraudulently made to circumvent the law and to defeat public policy; that Sinclair’s knowledge of that conspiracy to defraud was imputed to Stanolind and that Stanolind was a mala f,de trespasser; that Stanolind was presumed to have known that no law authorized the making of the lease; and that Stanolind participated in the illegal scheme by using the tanks to take oil from the Government’s reserve. This is enough, we think, to deny Stanolind the right to deduct from its gross income an amount which it was compelled to pay by reason of its participation in the scheme. The Supreme Court held it was against public policy for Mammoth to produce the oil. We think it was equally against public policy for Stanolind *1005 to buy the oil from Mammoth with the imputed knowledge of the fraud and corruption by which Mammoth had obtained the lease, and that it would likewise be against public policy to allow the deduction sought in this proceeding.
The cases relied upon by petitioner, we think, do not hold to the contrary. They are cases where private rights were invaded and not where wrongs were committed in bad faith against the Government. The court in the Hampton case clearly draws the distinction, wherein it says:
In none of these rules is it suggested that if the defendant in a civil suit charging medical malpractice, or tortiously wounding a person, or infringing a patent, is unsuccessful, the private wrongdoing so adjudged infects the payment for its defense. On the contrary, the italicized portion of the solicitor’s opinion shows that the distinction it makes is between the defense of offenses against the government, of which governmental policy prohibits consideration as ordinary incidents of a business, and defending private wrongdoing in the course of business, the cost of which is ruled deductible. [Italics by the court]
We hold, therefore, in view of what the Supreme Court held in Mammoth Oil Co. v. United States, supra, that it would be against public policy to allow Stanolind to deduct from its gross income any part of the payment of $2,901,865.46 here in question. The respondent’s disallowance of this deduction in determining Stanolind’s net loss for the period in question is sustained. It thus becomes unnecessary to consider issue (4).
Reviewed by the Board.

Decision will he entered u/nder Bule 60.