Alexander V. Spaeth and Aranka G. Spaeth v. Commissioner.
Spaeth v. Commissioner
Docket No. 90966.
United States Tax Court
T.C. Memo 1962-37; 1962 Tax Ct. Memo LEXIS 275; 21 T.C.M. (CCH) 184; T.C.M. (RIA) 62037; February 23, 1962
*275 Alexander V. Spaeth, pro se. Donald G. Daiker, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: The respondent determined a deficiency in petitioners' income tax liability for the years and in the amounts as follows: Addition to Tax
Year
Deficiency
Sec. 294(d)(1)(A)
1953
$921.36
1954
477.56
$87.80
1955
723.87
1956
389.32
The sole question for decision is whether petitioners are entitled to a deduction for attorney's fees expended in an unsuccessful defense of a perjury indictment. All other adjustments in the deficiency notice were conceded by petitioners at the trial. Findings of Fact The petitioners, Alexander V. Spaeth (hereinafter sometimes referred to as Spaeth) and Aranka G. Spaeth are husband and wife. Since the wife is a party only by reason of having signed a joint return, Speth will be referred to as the petitioner. For the taxable years 1953, 1954, 1955 and 1956, they filed their Federal income tax returns with the district director of internal revenue, Cleveland, Ohio. On August 14, 1952, at approximately 10 A.M. an armed robbery took place in Warren, Ohio. Julius Petro *276 (hereinafter referred to as Petro) and Joseph Sanzo (hereinafter referred to as Sanzo) were charged with the robbery. Spaeth, a practicing physician of Cleveland, Ohio, was subpoenaed as a defense witness on behalf of Sanzo who was a patient of his. The purpose of subpoenaing Spaeth was to establish the alibi that at the time of the bank robbery Sanzo was being treated by Spaeth for a skin rash in the doctor's office in Cleveland, which was approximately 50 miles from the scene of the crime. Spaeth was sworn as a witness at the Petro-Sanzo trial and testified that he first met and treated Sanzo at his office in Cleveland on August 12, 1952. He testified from his medication record card that he next saw Sanzo at his office on August 14, 1952, and he fixed the hour at 10 A.M. from an entry appearing in his appointment book. This was the exact time of the occurrence of the robbery in Warren with which his patient was charged. The medication card indicated on its face that the "4" of the stamped "August 14, 1952" was handwritten quite heavily in ink. On cross examination at the Petro-Sanzo trial, Spaeth testified as follows: Q. You have got August 12. You have got August 14. A. That's *277 right. Q. I want you to look at the record and indicate to the Court and jury, - in addition to the stamped date somebody has written over the stamped date on that particular day? A. They have. Q. Do you know what date was stamped over before that was written there? A. It was the 14th. Q. How do you know that? A. It was put in by myself at the time of the visit. That happens often, the stamp is incomplete or fades, and I write over it. Q. When did you do that? A. At the time of the visit. Petro and Sanzo were subsequently convicted and the conviction was affirmed. Petro v. United States, 210 F.2d 49 (C.A. 6, 1954), certiorari denied 347 U.S. 974 (1954). Following Spaeth's testimony in the Petro-Sanzo trial, he was indicted for perjury for giving false testimony under oath. Title 18, U.S. Code, Sec. 1621. The gist of the charge in the perjury indictment was that Spaeth testified under oath that the stamped date on the medication card was August 14, 1952, when he knew that the date stamped thereon was August 18, 1952. Three trials were conducted. The first two convictions were reversed and the cases remanded for new trials. Spaeth v. United States, 218 F.2d 361 *278 (C.A. 6, 1955); Spaeth v. United States, 232 F. 2d 776 (C.A. 6, 1956). The third conviction was affirmed on appeal. Spaeth v. United States, 254 F. 2d 924 (C.A. 6, 1958), certiorari denied 358 U.S. 831 (1958). Spaeth expended the following sums for attorney's fees in his unsuccessful defense of the perjury indictment: Year
Amount
1953
$ 5,993.00
1954
2,552.80
1955
10,455.55
1956
3,475.67
Total
$22,477.02 These sums were deducted on petitioners' Federal income tax returns for the respective years. Respondent disallowed these expenses on the grounds that "it has not been established that you are entitled to the deduction under any section of the Internal Revenue Code." As a consequence of the perjury conviction, Spaeth lost his license to practice medicine. Opinion It is well-established that legal expenses incurred in the unsuccessful defense of a criminal prosecution are not deductible. Sarah Backer, et al., Executors, 1 B.T.A. 214 (1924); Norvin R. Lindheim, 2 B.T.A. 229 (1925); B. E. Levinstein, 19 B.T.A. 99 (1930); Sanitary Earthenware Specialty Co., 19 B.T.A. 641 (1930); *279 Estate of John W. Thompson, 21 B.T.A. 568 (1930); Burroughs Building Material Co., 18 B.T.A. 101 (1929), affd. 47 F. 2d 178 (C.A. 2, 1931); and Thomas A. Joseph, 26 T.C. 562 (1956). We are aware of no sound reason for departing from this oft-announced rule now, and, accordingly, the respondent's determination is sustained. Decision will be entered for the respondent.